AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| Julieth Silva-Nevado | ) | Case No. |
| | ) | 6:26-mj- 1584 |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___May 13, 2026___ in the county of ___Orange___ in the ___Middle___ District of ___Florida___, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1546 | Fraud and misuse of visas permits and other documents. |

This criminal complaint is based on these facts:

See attached affividat.

☑ Continued on the attached sheet.

_Complainant's signature_

Javier A. Mondejar, EO, USCBP
_Printed name and title_

Sworn to before me over the telephone or other reliable electronic means and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d).

Date:  5/15/2026

_Judge's signature_

City and state:          Orlando, Florida                Nathan W. Hill, U.S. Magistrate Judge
_Printed name and title_

STATE OF FLORIDA                    CASE NO. 6:26-mj- 1584

COUNTY OF ORANGE

## AFFIDAVIT

I, JAVIER A MONDEJAR, Enforcement Officer at Orlando International Airport working for United States Customs and Border Protection ("USCBP") in Orlando, Florida, being duly sworn, state the following in support of the issuance of a criminal complaint:

1.    I am a Criminal Enforcement Officer at Orlando International Airport and have been so employed since 2008. Prior to assuming that position, I was a Customs and Border Protection Officer and have been employed with the agency since 2006. I am responsible for conducting investigations of the criminal statutes contained in the Immigration and Nationality Act, and related offenses contained in Titles 8 and 18 of the United States Code.

2.    The statements contained in this affidavit are based upon my own personal knowledge, as well as information provided to me by other law enforcement officials and employees of USCBP. I have not included in this Affidavit each and every fact and circumstance known to me, but only the facts and circumstances that I believe are sufficient to establish probable cause.

3.    On or about May 13, 2026, Julieth SILVA NEVADO (hereinafter "SILVA") arrived at Orlando International Airport on board Avianca Airlines Flight No. AV 28 from Bogota, Colombia. Upon arrival, SILVA proceeded to the primary inspection station and requested admission into the United States as a visitor for

pleasure. SILVA presented a valid Colombian Passport # BH648661 and valid B1/B2 visa foil # F307484 bearing the name "SILVA NEVADO, Julieth" to the primary officer. The USCBP Officer reviewed the documents and referred SILVA to passport control secondary with the comments "for further processing due to the fact that she was traveling to Orlando for 1 month to visit the parks, had extended hotel reservation but no tickets to the parks, traveling alone, no friends or family in Orlando, and only had one small duffle bag and a backpack."

4. SILVA was issued a B2 visa foil number (#U2905231) on October 26, 2023, and it is set to expire on October 24, 2033. SILVA had entered previously as a tourist under B1/B2 visa foil number U2905231. The Arrival and Departure Information System (ADIS) revealed that SILVA last entered the United States on March 5, 2024, and departed May 19, 2024, remaining 75 days in the United States. Since SILVA was not found in any immigration or criminal systems, USCBP officers generated an Alien File number (A# xxx-xxx-501), Fingerprint Identification Number (FINxxxxxx332), and FBI number (#xxxxx9TL).

5. In passport Control Secondary, SILVA was placed under oath, and a sworn statement was taken by USCBP Officer Davila in the Spanish language. All of SILVA's statements were given freely and voluntarily, and she stated that she was in good health and capable of making a statement. During the sworn statement, SILVA claimed that, on her prior visit to the United States, some friends took her to a warehouse to "test" a job, that she did not like, therefore she did not accept the position. However, a basic border phone search revealed a pay stub in SILVA's name

2

which also included the last four numbers of a Social Security number (3694) and a pay stub in the amount of $1,334 USD, as well as multiple photographs, messages, and videos showing her working during her previous visit. The paystub was for a U.S. company (Labor Personal, LLC) and reflected the work week of March 18, 2024 to March 24, 2024, which coincided with SILVA's last visit to the U.S.

6. At approximately 6 p.m., a pat-down search of SILVA was conducted by Officer Davila and witnessed by USCBP Officer Ulloa. The search concluded at approximately 6:03 p.m. and resulted in the discovery of a fraudulent Lawful Permanent Resident (LPR) card concealed in SILVA's breast area under her bra. After law enforcement officers located the LPR card, SILVA was interviewed a second time. SILVA was questioned about why she had a counterfeit LPR card hidden in her breast area, and SILVA stated that it was "because [she] knew it was wrong to have." When questioned regarding the purpose of possessing the counterfeit LPR card, SILVA stated that she had used it to obtain employment in the United States during her previous trip. During SILVA's initial sworn interview, SILVA denied ever having presented any documents to obtain work in the United States. SILVA further denied personally purchasing the counterfeit LPR card and stated that her friends, identified as "Kelsy" and "Aracelis," obtained the card for her without her request. During the subsequent interview, SILVA provided statements that were inconsistent with her earlier account. SILVA attempted to explain that she did not know the LPR card was counterfeit, despite her prior admission that she had never applied for an LPR card in the United States and her earlier statement that she hid the card on her body because

3

she knew it was wrong to have.

7. After the two border interviews were conducted, USCBP Criminal Enforcement Unit was notified of the incident and responded. The undersigned encountered SILVA in passport control secondary, at which time law enforcement computer system checks were conducted and revealed that SILVA did not have any petitions pending for status in the United States. The Alien number listed on the counterfeit LPR card (I-551) was not authentic and was not assigned to any individual.

8. Based upon the foregoing, your affiant submits that there is probable cause to believe that Julieth SILVA NEVADO knowingly possessed a forged, altered and counterfeit document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, namely an LPR card (I-551), in violation of 18 U.S.C. § 1546.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Javier A Mondejar
Criminal Enforcement Officer
U.S. Customs and Border Protection

Affidavit submitted by email and
attested to me as true and accurate
via video conference and/or telephone
consistent with Fed. R. Crim. P. 4.1
and 41(d)(3), before me this __15th__ day
of May, 2026.

_____
Honorable Nathan W. Hill
United States Magistrate Judge